UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TEAUNNA LEONARD,<br><br>    Plaintiff,<br> v.<br><br>DEJA VU SEATTLE LLC and ERIC FORBES,<br><br>    Defendants. | CASE NO. 2:23-cv-00085-TL<br><br>ORDER ON MOTION TO COMPEL ARBITRATION |

  Plaintiff TeAunna Leonard, who worked for Defendants Deja Vu Seattle LLC and Eric Forbes, filed this case to enforce an arbitration clause included in her employment agreement to address alleged wage-and-hour violations. This matter is before the Court on Plaintiff's Motion to Compel Arbitration. Dkt. No. 5. Having considered the relevant record, the Court GRANTS in part and DENIES in part the motion as ordered below.

**I. BACKGROUND**

  In 2019, Plaintiff worked for Defendants as an exotic dancer under an agreement entitled a "Dancer Performance Lease" (the "Agreement"). Dkt. No. 5-1 at 2–12. In its introduction, the

Agreement includes the following notice: "**THIS CONTRACT CONTAINS AN AGREEMENT TO INDIVIDUALLY ARBITRATE CERTAIN DISPUTES AND CLAIMS, WHICH IS FOUND IN SECTION 21 . . . .**"[1] *Id.* at 2 (emphasis in original). Section 21 of the Agreement contains multiple sub-clauses outlining an agreed-upon alternative dispute resolution process and an agreement to submit any claims that cannot otherwise be resolved to mandatory binding arbitration. *Id.* at 6–10. In summary, the relevant provisions of Section 21 state:

- The parties agree to resolve all "non-administrative" disputes arising from Plaintiff's work with Defendants through the alternative dispute resolution procedures outlined in the Agreement.

- The parties agree to attempt to resolve all such disputes via good-faith informal negotiation before proceeding to non-binding mediation if negotiations fail.

- The negotiation and mediation phases of the process may be skipped "[o]nly if a party believes that he/she/it requires emergency relief to prevent or abate alleged irreparable harm," at which point a party could proceed directly to the final dispute resolution phase of binding arbitration.

- To initiate the binding arbitration provisions of the agreement, a party must either (1) file "a demand for arbitration in accordance with the rules and procedures set by the arbitrator or arbitration service provider selected by the parties, or [(2)] petition[] a court of competent jurisdiction for the appointment of an arbitrator if the parties are unable to agree upon an arbitrator."

---

[1] The Court notes that the entire agreement is printed in "ALL CAPS," but for the sake of readability it will reproduce any subsequent quotations from the Agreement in normal case.

ORDER ON MOTION TO COMPEL ARBITRATION - 2

- If a party "is required to initiate proceedings to enforce,[sic] the arbitration requirements . . . the prevailing party to such []enforcement proceedings shall be entitled to an award of all costs, including reasonable attorneys' fees, incurred in litigating such issues."

- If a party "challenges, opposes, or fails to consent to, the enforceability of the mandatory arbitration requirements contained in this subsection [ ], any party that prevails in obtaining enforcement of these arbitration provisions shall be entitled to an award of all costs, including reasonable attorneys' fees, incurred in litigating any other matters in a court of law that would not have been necessary had the claim(s) initially been brought in arbitration under the terms of this subsection [ ]."

*Id.*

Plaintiff initially informed Defendants of her underlying claims in a demand letter issued by her former counsel in November 2019. Dkt. No. 13 at 3. Negotiations commenced and continued until approximately November 2020, after which no significant progress was made by the Parties to settle the dispute.[2] *Id.* Plaintiff then attempted to reinitiate negotiations through new counsel in late November 2022 and sought an agreement to extend the statute-of-limitations period on her claims to allow for further settlement negotiations. *Id.* at 4. Negotiations again stalled. *Id.* On December 27, 2022, Plaintiff's counsel informed Defendants' counsel that due to the apparent impasse, and the possibility that the statute of limitations for Plaintiff's underlying claims might run out, Plaintiff was officially demanding binding arbitration per the Agreement.

---

[2] While the competing declarations of the Parties' attorneys do not paint a perfectly clear picture of the nature of these negotiations (*see generally* Dkt. Nos. 5-5, 14), Plaintiff asserts that negotiations ceased in 2020, at least in part, because Defendants indicated they were experiencing financial difficulties that might hinder efforts to reach a mutually agreeable settlement amount (Dkt. No. 17 at 3–4, n.2). Plaintiff further asserts that her counsel attempted to reinitiate settlement discussions one other time, in September 2021, with no response (*id.*), and apparently, no follow-up for an additional year.

*Id.* In January 2023, Plaintiff attempted to confirm receipt of the arbitration demand and proposed a potential neutral arbitrator, Beth Terrell. *Id.* On January 18, 2023, receiving no response from Defendant and believing it necessary to preserve her underlying claims, Plaintiff filed this case styled as a Petition to Compel Arbitration. Dkt. No. 1. On January 24, 2023, Plaintiff filed the instant motion to compel arbitration, asking the Court to also appoint Beth Terrell as neutral arbitrator and to award Plaintiff fees and costs for having to seek emergency relief per the Agreement. Dkt. No. 5. Defendants responded in opposition (Dkt. No. 13), and Plaintiff replied (Dkt. No. 17).

## II.     LEGAL STANDARD

A district court's authority to compel arbitration arises under Section 4 of the Federal Arbitration Act ("FAA"). *In re Van Dusen*, 654 F.3d 838, 843 (9th Cir. 2011); 9 U.S.C. § 4. In deciding whether to compel arbitration, a court's inquiry is generally limited to two "gateway" issues: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If both conditions are met, "the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*

## III.    DISCUSSION

Plaintiff not only seeks to compel arbitration of her underlying claims pursuant the Agreement, but she also asks the Court to appoint her specified arbitrator, Beth Terrell, and award her costs and fees. Dkt. No. 5 at 8. Defendants ask the Court to deny the motion and instead award them costs and fees. Dkt. No. 13 at 12. Defendants further seek the appointment of an alternate proposed arbitrator or, in the alternative, an order requiring the Parties to pursue appointment of an arbitrator pursuant to Section 5 of the FAA. *Id.*

A.      **Compelling Arbitration Under Section 4 of the FAA**

As an initial matter, Defendants do not appear to dispute that Plaintiff's claims should be arbitrated. Dkt. No. 13 at 1 (acknowledging the "parties' agreement to arbitrate"). Rather, Defendants dispute whether Plaintiff "appropriately initiate[d] alternative dispute resolution or arbitration." *Id*. Defendants assert that Plaintiff cannot establish she has been "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" pursuant to Section 4 of the FAA. Dkt. No. 13 at 6–9 (quoting 9 U.S.C. § 4). Defendants' argument that Plaintiff has not alleged a "failure, neglect, or refusal" to arbitrate relies almost entirely on semantics, noting that Plaintiff never specifically used the words "fail," "neglect," or "refuse" in her initial pleadings. Dkt. No. 13 at 6–7. At a minimum, Plaintiff's pleadings must be read as alleging that Defendants neglected her December 27 arbitration demand and subsequent communications by failing to respond until after she sought emergency relief from the Court (Dkt. No. 1 ¶¶ 14–18), which Defendants do not dispute (Dkt. No. 13 at 9), regardless of Defendants' reasons for not responding.

Defendants' reliance on out-of-circuit authority to argue that Plaintiff is prematurely seeking relief under Section 4, and therefore cannot be said to be "aggrieved" by their delayed response, is easily distinguishable. Dkt. No. 13 at 7 (citing *Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 725 F.2d 192, 192 (2d Cir. 1984)). In *Downing*, a former Merrill Lynch employee preemptively sought to use Section 4 to enjoin Merrill from raising any claims it might have under an anti-solicitation agreement in any forum other than arbitration pursuant to the Rules of the New York Stock Exchange ("NYSE Rules"). *Id.* at 192–95. In that case, the Second Circuit determined that Downing had no authority to enforce the anti-solicitation agreement in question and could not therefore be "aggrieved" for Section 4 purposes "[u]nless Merrill Lynch commences litigation [instead of arbitration] or is ordered to arbitrate [its claims] by the [N.Y.

Stock] Exchange and fails to do so." *Id.* at 195. In other words, Merrill was the master of the underlying claims that the arbitration clause in question governed. At most, Downing could seek, and was granted, a declaratory judgment that any claim under the anti-solicitation clause would be arbitrable under the NYSE Rules. *Id.* In contrast here, Plaintiff is the "master" of the underlying wage-and-hour claims and need not wait for Defendants to act to initiate the arbitration provisions of the Agreement. Further, as provided in the Agreement (Dkt. No. 5-1 at 7–8), Plaintiff has expressly alleged that she believed she was in danger of losing her claims under the relevant statute-of-limitations due to Defendants' previous refusals to waive the limitations period to allow for further negotiations and subsequent failure to respond to her arbitration demand (Dkt. No. 5 at 4–5).[3] The Court finds that Plaintiff was therefore sufficiently aggrieved by Defendants' neglect of her arbitration demand to invoke Section 4 to seek emergency relief to enforce the arbitration provisions of the Agreement.

Again, Defendants do not appear to dispute either the validity of the Agreement's arbitration provisions or the arbitrability of Plaintiff's underlying claims under the Agreement. *See* Dkt. No. 13 at 13. Therefore, pursuant to Section 4, the Court is obligated to "enforce the arbitration agreement in accordance with its terms." *Chiron*, 207 F.3d at 1130. Accordingly, the Court GRANTS the motion to compel arbitration.

---

[3] The Court recognizes that the limitations period's expiration is a contested issue (*see* Dkt. No. 13 at 3; Dkt. No. 17 at 4), and that the Agreement forecloses arbitration if the limitations period on Plaintiff's underlying claims had in fact lapsed prior to her filing this case (*see* Dkt. No. 5-1 at 7). Since the Agreement allows for emergency relief predicated on *the moving party's belief* of potential irreparable harm, and because Plaintiff, as moving Party, has alleged that it is her belief that her limitations period was about to, but had not yet, expired which prompted her to seek emergency relief, the Court considers the dispute regarding the statute of limitations an arbitrable issue under the Agreement, and will therefore not address it in this Order.

### B. Appointment of a Neutral Arbitrator

Under the Agreement, arbitration proceedings must be "administered by an independent neutral arbitrator *agreed upon by the parties*." Dkt. No. 5-1 at 8 (emphasis added). Only "if the parties are unable to agree upon an arbitrator" are the parties permitted to petition the Court for appointment. *Id.* Even when a party is forced to seek emergency relief under the Agreement, as is the case here, the Agreement contemplates a cooperative process between the parties to identify a mutually agreeable arbitrator *before* seeking the Court's involvement. *Id*. at 9 ("If a party seeks emergency relief to prevent or abate alleged irreparable harm but the parties are *unable to agree to an arbitrator within three (3) business days*, the parties shall *jointly petition* a court of competent jurisdiction for appointment of a neutral arbitrator . . . ." (emphasis added)).

Here, it appears the Parties have never actually attempted to reach a mutually agreeable decision on a potential neutral arbitrator. Defendants admit that they never responded to Plaintiff's proposed arbitrator until after this case and motion were filed. Dkt. No. 13 at 9–10. Despite the unfortunate timing of their response, Defendants have nonetheless articulated their reasons for rejecting Beth Terrell as arbitrator in this case and have proposed two alternate arbitrators in their opposition briefing. *Id.* Plaintiff does not meaningfully respond to the two proposed alternate arbitrators, but instead appears to argue on reply that by failing to respond to Plaintiff's follow-up arbitration demand wherein she initially proposed Beth Terrell, prior to her petitioning the Court for emergency relief, Defendants have somehow forfeited their opportunity to participate in the process of negotiating who the arbitrator should be. *See* Dkt. No. 17 at 5–6. While the Court agrees with Plaintiff that a "major problem [with the Agreement is that it] does not have a clear process" for selecting an arbitrator, Plaintiff nevertheless concedes that "the [A]greement requires the parties to try to negotiate and come to agreement." *Id.* at 5 (citing Dkt. No. 5-1 at 8). For that reason, the Court is not prepared to contravene the Agreement's

expectation of cooperation unless and until the Parties have made a meaningful effort to come to a mutual agreement on the matter.

The Court therefore DENIES both Parties' requests to appoint an arbitrator. The Court instead ORDERS the Parties to meet and confer in good faith by no later than Friday, June 30, 2023, to determine a mutually agreeable arbitrator. If the Parties are unable to reach agreement, the Parties shall jointly file a petition with the Court to appoint an arbitrator in which they shall describe their meet-and-confer efforts and propose no more than three (3) options for the Court to consider with each Parties' position on each proposed option.

**C.  Allocation of Costs and Fees**

Neither Party will be awarded costs or fees. The Agreement states that "the prevailing party [in] challenges/enforcement proceedings shall be entitled to an award of all costs, including reasonable attorneys' fees, incurred in litigating such issues." Dkt. No. 5-1 at 9. Regardless, it is within the Court's discretion to determine when a party has sufficiently prevailed to warrant the awarding of cost and fees in a contract dispute. *See, e.g.*, *Valenzuela v. ADT Sec. Servs., Inc.*, 475 F. App'x 115, 118 (9th Cir. 2012) (holding that "[i]t was well within the trial court's discretion to decline . . . prevailing party status" in plaintiff's otherwise successful breach of contract claim) (citing *Berkla v. Corel Corp.*, 302 F.3d 909, 922 (9th Cir.2002)). Even though Plaintiff has technically succeeded in compelling arbitration, the arbitrability of her claims was never really in dispute. *See supra* § III.A. Here, the Court finds neither Party achieved their primary objective in bringing or opposing this motion: (1) Defendants failed to defeat Plaintiff's Section 4 motion for emergency relief, but (2) Plaintiff failed to have her preferred arbitrator appointed to oversee the otherwise unopposed arbitration proceedings. *Id.* §§ III.A–B. Therefore, the Court finds that neither Party has sufficiently prevailed to warrant awarding costs and fees under the Agreement.

## IV. CONCLUSION

For the reasons stated herein, the Court ORDERS the following:

1. Plaintiff's motion to compel arbitration (Dkt. No. 5) is GRANTED in part, and the Parties are DIRECTED to arbitrate Plaintiff's underlying claims in accordance with the terms of the Agreement.

2. Plaintiff's request to appoint Beth Terrell as arbitrator is DENIED.

3. Defendants' request to appoint either Judge John P. Erlick (ret.) or Judge Bruce W. Hilyer (ret.), or in the alternative to require the Parties to move for appointment per 9 U.S.C. § 5, is DENIED.

4. The Parties shall instead meet and confer in good faith by **no later than Friday, June 30, 2023**, to determine a mutually agreeable arbitrator. Only if the Parties are unable to reach agreement shall they jointly file a petition with the Court to appoint an arbitrator. The Parties' joint petition must include a description of their meet-and-confer efforts and must propose **no more than three (3)** arbitrator options for the Court to consider with each Parties' position on each proposed option.

5. Plaintiff's and Defendants' requests for costs and fees are DENIED. The Parties shall be responsible for their own costs and fees related to this litigation to date.

Dated this 20th day of June 2023.

Tana Lin
United States District Judge